959 F.2d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
QUALITY CLINICAL LABORATORIES, INC.; Reginald B. Henderson,
Plaintiffs-Appellants,
v.
Lee HYNDMAN, et al., Defendants,
Adolph McQueen; Thomas Fuller; State of Michigan,
Defendants-Appellees.
 No. 91-1355.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1992.
 
 Before RALPH B. GUY Jr. and DAVID A. NELSON, Circuit Judges, and REAVLEY, Senior Circuit Judge*.
 PER CURIAM.
 
 
 1
 In 1985, the plaintiffs, Quality Clinical Laboratories, Inc., and Reginald B. Henderson (hereinafter "Quality"), filed a civil rights action against several employees of the Michigan Attorney General's Office. The complaint alleged racial discrimination, conspiracy, and unlawful search and seizure arising from a Medicaid fraud investigation conducted by the Economic Crime Division (ECD) of the Attorney General's Office.
 
 
 2
 After discovery, all claims were dismissed against all of the defendants, except the illegal search and seizure claim asserted against McQueen and Fuller, the two defendants in this case. The dismissal was upheld on appeal. Subsequently, the district court granted summary judgment to McQueen and Fuller, and this appeal followed.
 
 
 3
 In granting summary judgment, Judge Cohn carefully considered all of the plaintiffs' arguments and issued a written opinion. Plaintiffs reiterate their trial court arguments on appeal. After a review of the record, we conclude that Judge Cohn properly granted summary judgment, and we affirm on the basis of his written opinion. We write briefly only for additional clarification.
 
 I.
 
 4
 Unnecessary laboratory tests, or tests billed for but never administered, are a pernicious type of Medicaid fraud. The Economic Crime Division of the Michigan Attorney General's Office was charged with investigating such abuses. One of the preliminary investigative techniques is to ascertain those persons or groups who are doing the most billing for laboratory tests. Although billing quantity does not equate with wrongdoing, it is a starting point.[1] Quality billed for a large volume of laboratory work for Medicaid patients. Quality was paid by the Michigan Department of Social Services for work it performed for Medicaid recipients and eventually attracted the attention of the ECD. Preliminary investigation led the ECD to suspect wrongdoing on the part of Quality. On the strength of the information it developed, the ECD secured five separate search warrants for premises owned and operated by Quality. One of the five search warrants was obtained on the affidavit of defendant Fuller and another on the affidavit of defendant McQueen. Their role as affiants ultimately resulted in the Fourth Amendment claim being asserted against them.
 
 II.
 A. The Fuller Affidavit
 
 5
 Kickbacks by laboratories to physicians ordering tests are one of the practices prohibited by the Michigan Medicaid False Claim Act. The ECD investigation led to the prosecution of Dr. Larry Reid. Dr. Reid and the State resolved this prosecution by a plea agreement under which Dr. Reid pleaded guilty to a violation of Michigan personal income tax law. In return, there would be no further prosecution for Medicaid fraud, but Dr. Reid did agree, as part of the bargain, to give testimony as to a kickback arrangement between plaintiff Henderson and Dr. Reid's former spouse. The Reid testimony, taken by deposition, formed a substantial part of the basis for Fuller's affidavit. Fuller was present during the taking of the deposition.
 
 
 6
 In Fuller's affidavit, he refers specifically to kickbacks, although Dr. Reid in his deposition stopped short of explicitly admitting that he took kickbacks. Notwithstanding this fact, we find plaintiffs' arguments on this point to be little more than a quibble. Any reasonable person reading Dr. Reid's deposition would have reached the same conclusion as did Fuller--Dr. Reid and Henderson, operating through Dr. Reid's wife, were involved in illegal kickbacks. There is no question that Fuller was entitled to summary judgment on this claim.
 
 B. The McQueen Affidavit
 
 7
 The alleged wrongful involvement of McQueen was accurately captured in the district court opinion as follows:
 
 
 8
 In his affidavit, McQueen stated that Quality inaccurately told the Medicaid program that Dr. William Dougan (Dr. Dougan) ordered tests for patients treated at Hutzel Hospital in 1985. McQueen supported this statement by stating that: (1) patients were never treated at Hutzel Hospital and (2) Quality nevertheless used Dr. Dougan's Hutzel Hospital Fund Medicaid identification number on billing forms submitted to the Medicaid program.
 
 
 9
 (App.1090).
 
 
 10
 Quality's claim against McQueen is predicated not on misstatements but on omissions. Quality claims that the patients in question were in fact seen by Dr. Dougan, but at a location other than Hutzel Hospital. There are two problems with this argument. First, Quality was responsible, at least initially, for McQueen's misapprehension because Quality indicated in its payment affidavits that the referrals were from Hutzel Hospital. Second, if McQueen was guilty of anything, it would be negligence at most, and negligence will not ground an action brought under 42 U.S.C. § 1983.
 
 
 11
 In sum, neither Fuller nor McQueen made intentional misstatements in their affidavits, nor did they include assertions that they did not reasonably believe to be true.[2]
 
 
 12
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 Indeed, here the plaintiffs were not prosecuted as a result of the investigation that triggered the lawsuit
 
 
 [2]
 Since we find no factual basis for liability as to Fuller or McQueen, we find it unnecessary to further discuss the question of Henderson's standing to sue that was addressed by the district judge